UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
THOMAS BUTTARO

                Plaintiff,                  MEMORANDUM AND ORDER
                                                        15-CV-5703

   - against –

THE CITY OF NEW YORK, DANIEL A. NIGRO,
individually and in his capacity as Commissioner
of The New York City Fire Department, and
PAUL WASHINGTON, individually and in his
capacity as Captain in the New York City Fire
Department

                Defendants.
----------------------------------------------------------x
GLASSER, Senior United States District Judge:

       Defendants move for reconsideration of this Court's decision in <u>Buttaro v. City of N.Y.</u>, No. 15-CV-5703, 2016 WL 4926179 (E.D.N.Y. Sept. 15, 2016) (hereinafter the "M&O"), which granted Defendants' motion to dismiss Plaintiff's complaint on all but one claim. Plaintiff's sole surviving claim alleges that defendants Washington, Nigro and the City of New York (together, the "Defendants") violated his rights under the First Amendment of the United States Constitution by retaliating against him for statements he made during the October 1, 2012 fairness hearing before the United States District Court for the Eastern District of New York. Plaintiff has not opposed this motion for reconsideration, nor has he responded to Defendants' attempts to contact him via telephone and voicemail. ECF 39. Defendants' motion is deemed fully briefed and unopposed,[1] and is now addressed by the Court.

---

[1] Some procedural developments have occurred since issuance of the M&O. On September 23, 2016, Plaintiff's attorney moved to withdraw, citing a breakdown in the attorney/client relationship, and to stay the case. ECF 26. In response, this Court issued an order (1) requesting more information from Plaintiff's attorney in support of their motion, (2) requiring that new

1

The Local Civil Rules of this court provide that a party may seek reconsideration of an order upon "setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." Local Civil Rule 6.3. Reconsideration may be justified by an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992); see also Brown v. City of N.Y., 622 F. App'x 19, 19 (2d Cir. 2015). Further, "so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so." United States v. LoRusso, 695 F.2d 45, 53 (2d Cir. 1982); see also Unites States v. Jerry, 487 F.2d. 600, 604 (3d Cir. 1973); Liberty Media Corp. v. Vivendi Univ. S.A., 842 F.Supp.2d 587, 592 (S.D.N.Y. 2012). The M&O, which denied Defendants' motion to dismiss in part, is an interlocutory order over which this Court maintains jurisdiction and may correct as justice requires. Vera v. Republic of Cuba, 802 F.3d 242, 246 (2d Cir. 2015) ("A final decision is one

---

counsel appear on Plaintiff's behalf by November 16, 2016, or else he would be deemed to be proceeding *pro se*, (3) ordering that an amended complaint be filed within three weeks of new counsel's appearance, and (4) ordering that Defendants' motion for reconsideration be filed within three weeks after the amended complaint or after notification that an amended complaint was no longer contemplated. ECF 28.

On November 16, 2016, the Court granted counsel's uncontested motion to withdraw and granted Plaintiff's application for an extension of time to retain new counsel, until December 29, 2016. ECF 32. On December 28, 2016, Plaintiff requested a second extension of time to retain new counsel (ECF 33), which request was denied. ECF 34. Buttaro was deemed to be proceeding *pro se*, and allowed until February 2, 2017 to file an amended complaint as to his equal protection claim only. Id. Buttaro never filed an amended complaint, and the equal protection claim is now deemed dismissed pursuant to the M&O. Instead, Buttaro moved for an opportunity to contest the reasons given by his former counsel for the breakdown in their relationship (ECF 35), which motion this Court denied. ECF 36. Defendants then timely filed this motion for reconsideration of the M&O. ECF 37. Plaintiff was to oppose the motion by March 13, 2017, but failed to do so. ECF 39.

that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." (internal citation and quotation omitted)); see also Luv n' Care, Ltd. v. Regent Baby Prods. Corp., 986 F.Supp.2d 400, 411 (S.D.N.Y. 2013) (a motion granting *partial* summary judgment is not a final order). Having reconsidered the facts as set forth in the complaint, and for the reasons stated herein, the Court grants Defendants' motion.

While familiarity with the factual background and the M&O is assumed, a brief timeline of the relevant events, taken from the Complaint (ECF 1, "Complt."), is necessary to address the propounded arguments:

| | |
|---|---|
| 2011 | Buttaro begins wearing the M.A.D.D. and Merit Matters t-shirts (the "t-shirts"). Complt. at ¶ 38. |
| May 6, 16 & 21, 2012: | Buttaro is involved in three separate confrontations regarding the t-shirts. Id. at ¶¶ 50-69. Most of these confrontations involve Officer Shawn L. Thomas ("Thomas"), who was named as a defendant but dismissed from the case for reasons indicated in the M&O. M&O at p. 18. |
| May 22, 2012 | Thomas files a complaint with the EEOC regarding Buttaro's t-shirts. Complt. at ¶ 70. He withdraws the complaint a few days later. |
| June 14 & 28, 2012 | The Fire Department issues two orders reiterating its anti-retaliation and anti-discrimination policies, and stating the importance of strict compliance with Department rules, including its uniform policy. |
| September 21, 2012 | Thomas spots Buttaro wearing an unauthorized t-shirt at the firehouse. Id. at ¶ 89. |
| October 1, 2012 | Buttaro testifies at the fairness hearing. Id. at ¶ 80. |
| October 8, 2012 | Thomas takes a photo of Buttaro wearing an unauthorized t-shirt in the firehouse. Id. at ¶ 82. Later that same day, defendant Washington reports to the EEO office that he received a complaint about Buttaro's t-shirt from a firefighter in his command, Thomas. Id. at ¶ 83. |
| October 12, 2012 | The EEO office notifies Buttaro that he is being investigated for creating a hostile work environment on four specific dates in |

3

|  |  |
|---|---|
|  | 2012: May 6 and 16, September 21 and October 8. Id. at ¶¶ 87-88. |
| Between May and August 2013 | The EEO office designates Buttaro as "not in good standing." Id. at ¶ 94. |
| September 19, 2013 | The EEO office files formal charges against Buttaro for (1) creating a hostile work environment, (2) failure to wear department-issued clothes and (3) failure to comply with a department order. Id. at ¶ 95. |
| January 13, 2015 | Following a five day hearing, an administrative law judge issues a report recommending Buttaro's termination. Id. at ¶ 96; ECF 14-2. |
| February 10, 2015 | Defendant Nigro, the Fire Department's commissioner, terminates Buttaro's employment. Complt. at ¶ 97. |

To state a claim of first amendment retaliation, Buttaro must plead "that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." Matthews v. City of New York, 779 F.3d 167, 172 (2d Cir. 2015) (internal citation and quotation omitted). Defendants argue the Complaint fails to plead a causal connection between Buttaro's statements at the fairness hearing and the adverse actions he suffered. Instead, Defendants say that the adverse actions were caused by, and related solely to, Buttaro's t-shirts, which this court has already held was not protected speech under the First Amendment and cannot serve as the basis for Buttaro's retaliation claim. M&O at p. 14.

"[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. NYC Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000); see also Littlejohn v. City of N.Y., 795 F.3d 297, 319 (2d Cir. 2015). Upon re-examination of the chronology of events, the

4

Court finds that the Complaint is indeed devoid of allegations causally linking Plaintiff's speech at the fairness hearing to any adverse employment action.

In pleading a causal connection, Plaintiff alleges that Thomas and Washington "aided and abetted" each other to photograph Buttaro wearing the t-shirt on October 8, 2012 so that they could file a "bogus" EEO complaint in retaliation for Buttaro's speech at the fairness hearing the week before. Complt. at ¶¶ 82-86, 90. To the contrary, the Complaint indicates that Buttaro's repeated decision to wear the offending t-shirts was the sole animating factor driving the EEO complaint, investigation, charges and his ultimate termination, and pleads no facts to infer that Buttaro's statement at the fairness hearing was "at least a substantial motivating factor in the adverse employment action[s]" he suffered. Garcia v. Hartford Police Dept., 706 F.3d 120, 130 (2d Cir. 2013). Incidents involving Buttaro's t-shirts long pre-dated the fairness hearing, and Buttaro was photographed wearing the unauthorized t-shirt hours before the EEO complaint was made on October 8, 2012. The EEO complaint, investigation, charges and termination all related to the t-shirts, with no mention of the fairness hearing. Rather, it is clear that Defendants were offended by the t-shirts and attempted to enforce a prohibition of them consistently, both before and after Plaintiff engaged in protected speech at the hearing. See e.g. Garcia, 706 F.3d at 131; Clark Cnty. Sch. Dist. V. Breeden, 532 U.S. 268, 272 (2001).

On the other hand, indirect causation can be shown through disparate treatment or temporal proximity. "[A] plaintiff can rely on the mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action, but in such cases, courts uniformly hold that the temporal proximity must be very close." Adams v. Ellis, 09-CV-1329, 2012 WL 693568, *16 (S.D.N.Y. Mar. 2, 2012) (internal quotations and citations omitted). Even if the fairness hearing and initiation of the EEO investigation were adverse

5

actions and temporally proximate to infer a causal link between the two, that Buttaro wore an infringing t-shirt on October 8, 2012, after the fairness hearing and on the same day the EEO complaint was made, "provides an exceedingly plausible alternative" reason for the EEO complaint and subsequent events. Estronza v. RJF Sec. & Investigations, No. 12-CV-1444, 2014 WL 5877942, at *10 (E.D.N.Y. Nov. 12, 2014) (collecting cases); Yarde v. Good Samaritan Hosp., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005). The existence of an intervening event "dispels an inference of a causal relationship between the protected activity and [the adverse employment action], thus defeating Plaintiff's *prima facie* case of unlawful retaliation." Placide–Eugene v. Visiting Nurse Service of N.Y., 86 F.Supp.3d 132, 150 (E.D.N.Y. 2015); see also Puglisi v. Town of Hempstead, No. 10-CV-1928, 2012 WL 4172010, at *10 (E.D.N.Y. Sept. 17, 2012), aff'd sub nom. 545 F. App'x 23 (2d Cir. 2013).

As for disparate treatment, the Complaint alleges that other firefighters who wore unauthorized shirts were not charged or terminated. Complt. at ¶¶ 103, 107. Disparate treatment requires "a showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group." Ruiz v. Cty. of Rockland, 609 F.3d 486, 493–94 (2d Cir. 2010). Even on a motion to dismiss, "a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011); see also Offor v. Mercy Med. Ctr., No. 16-839, 2017 WL 253616, at *2 (2d Cir. Jan. 20, 2017). Here, there are no facts alleged that the other firefighters who wore the t-shirts engaged in behavior comparable to Buttaro's. Indeed, the Court doubts that those other employees are similarly situated, as the administrative law judge noted in her decision that, "[o]nce Thomas made it known that the Merit Matters and MADD t-shirts were

offensive, everyone in the firehouse, *except [Buttaro]*, ceased wearing them." ECF 14-2 at p. 25 (emphasis added). The Complaint falls short of pleading both direct and indirect causation related to the fairness hearing to sustain the retaliation claim.

## CONCLUSION

Upon reconsideration, the Court holds that the Complaint is devoid of well pleaded allegations from which to infer a causal connection between Plaintiff's statements at the fairness hearing and the adverse employment actions he suffered. Plaintiff's remaining cause of action is dismissed. Defendants are directed to serve a copy of this Order on Plaintiff.

SO ORDERED.

Dated:   Brooklyn, New York
         May 8, 2017

                                           /s/
                                     I. Leo Glasser